MURTAGH vs. SHEA, MISC 20-000195

































 
 JULIE MURTAGH and MARIE PORZIO, Plaintiffs, v. KEVIN R. SHEA and JUDITH RICHLAND, Defendants
 MISC 20-000195 
 AUGUST 19, 2021
BARNSTABLE, ss.
ROBERTS, J.
MEMORANDUM OF DECISION ALLOWING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO COUNTS ONE AND TWO OF THE PLAINTIFFS' VERIFIED COMPLAINT














 INTRODUCTION 





 Plaintiffs Julie Murtagh and Marie Porzio ("Plaintiffs") commenced this action with the filing of a verified complaint ("the Complaint") on May 29, 2020, seeking (1) a declaratory judgment that Plaintiffs' property at 395 Shore Road, Truro ("395") has the benefit of two easements over 402 Shore Road ("402") and 408 Shore Road ("408"), Truro, owned by defendants Kevin R. Shea and Judith Richland ("Defendants") to reach the waters of Cape Cod Bay (Counts I and II); and (2) a judgment that Plaintiffs' property at 393 Shore Road ("393") has the benefit of a prescriptive easement over 402 to use the beach and access the waters of Cape Cod Bay (Count III). On January 26, 2021, Defendants' Motion For Partial Summary Judgment With Respect To Counts One And Two Of The Plaintiffs' Verified Complaint ("the Motion") was filed, along with supporting papers. Plaintiffs' opposition thereto was filed on March 4, 2021, and Defendants' reply thereto was filed on July 30, 2021. A hearing on the Motion was 

held on August 11, 2021. This memorandum of decision follows. For the reasons set forth below, the Motion is ALLOWED. 





UNDISPUTED FACTS 





 The following facts established in the record and pertinent to the Motion are undisputed or are deemed admitted. 





The Parties and Properties 





 1. Plaintiffs own the real property at 395 by deed dated February 27, 2017, recorded with the Barnstable Registry District of the Land Court ("the Registry District") as Document No. 1,317,932 and noted on Certificate of Title No. 212465. Defendants' Statement Of Material Facts Not In Dispute Submitted Pursuant To Land Court Rule 4 (2nd Paragraph) ("SOMF") [Note 1] ¶ 1.





 2. 395 is located on the northerly side of Shore Road, also known as Route 6A, directly across the street from 402 and 408, and does not directly abut Cape Cod Bay. SOMF ¶ 1.





 3. Plaintiffs also own 393, likewise located on the northerly side of Shore Road and which directly abuts 395. SOMF ¶ 1. 





 4. Defendants acquired 402 by deed dated September 11, 2018 and recorded with the Barnstable County Registry of Deeds ("the Registry") at Book 13530, Page 12. SOMF ¶ 2. 





 5. Defendants acquired 408 by deed dated October 10, 1991 and recorded with the Registry at Book 7711, Page 69. SOMF ¶ 2. 





 6. 402 and 408 are located on the southerly side of Shore Road and directly abut Cape Cod Bay. SOMF ¶ 2. 





Relevant Title History





 7. In the late 1980s, 395, 402 and 408 were owned by Harry B. Miller, Jr. ("Mr. Miller") and Robert W. Pollard, as Trustees of the Beach Front Realty Trust ("the Trust"), SOMF ¶ 3, having been acquired by deed dated September 3, 1987 from MRS Associates, a Connecticut general partnership, executed by Ronald M. Meneo, Pat Siniscalco ("Mr. Siniscalco") and James Rybeck ("Mr. Rybeck") as partners, and recorded with the Registry at Book 5925, Page 29 on September 14, 1987. [Note 2] 





 8. 402 and 408 were the location of the former "Fore N' Aft Motel." SOMF ¶ 3. 





 9. 402 and 408 are shown on a plan entitled "Plan Of Land In Truro, Massachusetts Prepared For North Truro Associates, Inc. Scale 1" = 30' Date: 8/18/87 Prepared By McKinnon and Sons 469 Slocum Rd., N. Dartmouth, MA 02747" ("the 1987 Plan"), with what is now 402 being shown as Lot A on the 1987 Plan and what is now 408 being shown as Lots C, D, E and F on the 1987 Plan. SOMF ¶ 9; Complaint Ex. C. 





 10. On September 14, 1987, the same date that the deed to the Trust from MRS Associates was recorded, the Trust executed three mortgages encumbering 402 and 408 ("the 1987 Mortgages"): (a) a first mortgage encumbering 408 to secure the repayment of $330,000.00 given to U.S. Trust Company ("U.S. Trust") and recorded with the Registry at Book 5925, Page 34, SOMF ¶ 8 and Complaint Ex. D; (b) a second mortgage encumbering 408 and a first mortgage encumbering 402 to secure the payment of $250,000.00 given to Mr. Siniscalco and Joan Siniscalco ("Ms. Siniscalco" and, collectively, "the Siniscalcos") as to an undivided one-half interest and to Mr. Rybeck as to an undivided one-half interest and recorded with the Registry at Book 5925, Page 47, SOMF ¶ 9 and Complaint Ex. E; and (c) a second mortgage encumbering 402 [Note 3] to secure the payment of $330,000.00 given to U.S. Trust recorded with the Registry at Book 5925, Page 52. SOMF ¶ 10 and Complaint Ex. F. 





 11. By deed dated April 13, 1989 and recorded with the Registry at Book 6704, Page 150, the Trust conveyed 395, described therein as Lot 1 on a plan entitled "Plan of Land in N. Truro, Mass, dated May 3, 1986, drawn by Cape Cod Survey Consultants being Land Court Plan 41224A-3 (Pending)" ("the 1986 Plan") to MRS Associates, Inc. ("MRS"). SOMF ¶ 4; Complaint Ex. A. 





 12. MRS was created on April 12, 1989 with the filing of Articles Of Organization with the Massachusetts Secretary of State. Plaintiffs' Appendix To Opposition To Motion For Summary Judgment On Counts I And II Of Verified Complaint ("P. App."), Ex. 10. 





 13. In the Articles Of Organization, the officers are listed as Mr. Siniscalco, president and treasurer, Mr. Rybeck, co-president, Mr. Miller, clerk, and the directors are listed as the same three individuals. P. App. Ex. 10. 





 14. On October 5, 1989, the Trust conveyed two easements to MRS for the benefit of 395, described therein as Lot 1 on Land Court Plan 41224 A-3, by document recorded with the Registry at Book 6909, Page 103 ("the Easements"). SOMF ¶ 5; Complaint Ex. B. 





 15. The Easements are two four-foot walkways running from Shore Road south, one along the westerly boundary of Lot C (now 408) and one along the easterly boundary of Lot A (now 402) as shown on the 1987 Plan, "for purposes of access to the Cape Cod Bay and for that area lying between the high water and low water marks, for pedestrian traffic only," SOMF ¶¶ 5-6; Complaint Ex. B. 





 16. There is no recorded agreement from U.S. Trust or the Siniscalcos and Mr. Rybeck subordinating the 1987 Mortgages to the Easements. [Note 4] 





 17. On March 23, 1990, U.S. Trust foreclosed on its first mortgage on 408 and its second mortgage on 402, advertising the latter foreclosure as being subject to the mortgage in favor of the Siniscalcos and Mr. Rybeck, conducting a public auction at which U.S. Trust was the high bidder. SOMF ¶ 12; Complaint Ex. G. 





 18. The newspaper publication for the foreclosure of 408 stated: 





 Said premises will be sold subject to the above and to all restrictions, easements, improvements, outstanding tax titles, municipal or public taxes, assessments, liens or claims in the nature of liens, and existing encumbrances of record, if there be any, and all encumbrances of record which are prior to said mortgage. 





 SOMF ¶ 13; Complaint Ex. G. 





 19. The newspaper publication for the foreclosure of 402 stated: 





 Said premises will be sold subject to the above and to all restrictions, easements, improvements, outstanding tax titles, municipal or public taxes, assessments, liens or claims in the nature of liens, and existing encumbrances of record, if there be any, and all encumbrances of record which are prior to said mortgage, including, without limitation a senior mortgage to Pat P. Siniscalco and Joan Siniscalco dated September 11, 1987, recorded in said Deeds in Book 5925, page 047. 





 Complaint Ex. G. 





 20. U.S. Trust took title to 402 and 408 by foreclosure deed recorded with the Registry at Book 7135, Page 100. Complaint Ex. G. 





 21. Thereafter, U.S. Trust conveyed title to 402 and 408 to Norfolk Holdings Corp. by deed recorded with the Registry at Book 7220, Page 328. SOMF ¶ 14. 





 22. On October 10, 1991, Norfolk Holdings Corp. deeded 402, subject to the mortgage to the Siniscalcos and Mr. Rybeck, and 408 to Defendants by deed recorded with the Registry at Book 7711, Page 69. SOMF ¶ 15; Complaint Ex. H. 





 23. On January 2, 2001, the Siniscalcos and Mr. Rybeck's successors, Barbara Rybeck and Dean Rybeck, as temporary co-executors of his estate, foreclosed on their mortgage on 402, conveying 402 to the Siniscalcos as to an undivided one-half interest and Barbara Rybeck ("Ms. Rybeck") as to an undivided one-half interest by deed recorded with the Registry at Book 13530, Page 12 ("the 2001 Foreclosure Deed"). SOMF ¶ 16; Complaint Ex. I. [Note 5]





 24. The newspaper publication for this foreclosure of 402 stated that "[s]aid premises will be sold subject to: ... 2. [e]asements, covenants, restrictions, and other matters of record insofar as the same are now in force and applicable." Complaint Ex. I. 





 25. By deed dated May 16, 2005 and recorded with the Registry at Book 19827, Page 322, Plaintiffs took title to 393. Complaint Ex. L;P.App. Ex. 12. 





 26. On June 4, 2015, MRS conveyed 395 to Ms. Siniscalco by deed filed with the Registry District at Document No. 1,273,229 on July 6, 2015 ("the 2015 Deed"). P. App. Ex. 14. 





 27. By deed filed with the Registry District as Document No. 1,317,932 on March 30, 2017 ("the 2017 Deed"), Plaintiffs purchased 395 from Ms. Siniscalco. SOMF ¶ 17; Complaint Ex. J. 





 28. Unlike the 2015 Deed, the 2017 Deed included the following language: 





 Also included are those easement rights as conveyed to MRS Associates, Inc. by Harry B. Miller, Jr. Trustee of Beach Front Realty Trust, in instrument dated October 5, 1989, recorded on October 5, 1989 in Book 6909, Page 103 with the Barnstable Registry of Deeds. 





 SOMF ¶ 18; Complaint Ex. J. 





 29. At the time of the 2017 Deed, Ms. Siniscalco and Ms. Rybeck were owners of 402. SOMF ¶¶ 18-19. 





 30. On September 11, 2018, the Siniscalcos and Ms. Rybeck conveyed 402, title to which they held by virtue of the 2001 Foreclosure Deed, to Defendants by deed recorded with the Registry at Book 31521, Page 128. SOMF ¶ 20; Complaint Ex. K. 





STANDARD OF REVIEW 





 Generally, summary judgment may be entered if the "pleadings, depositions, answers to interrogatories, and responses to requests for admission ... together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (C). In viewing the factual record presented as part of the motion, the court draws "all logically permissible inferences" from the facts in favor of the non-moving party. Willitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202 , 203 (1991). A party "moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass. R. Civ. P. 56 (c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." Kourouvacilis v. General Motors Corp., 410 Mass. 706 , 716 (1991). "Summary judgment is appropriate when, 'viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.'" Regis College v. Town of Weston, 462 Mass. 280 , 284 (2012), quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117 , 120 (1991). 





DISCUSSION 





 In Count I of the Complaint, Plaintiffs seek a declaration that the Easements were not extinguished (1) by the 1990 foreclosure sale of 408 because the notice of that foreclosure sale indicated that the foreclosure was subject to easements of record or (2) by the 2001 foreclosure sale of 402 because of the intent of the mortgagees that the easement not be extinguished as found, among other places, in the statements of some individuals having overlapping involvement with the Trust, MRS and the 1987 Mortgages. In Count II, Plaintiffs seek a declaration that the 2017 Deed created a new easement in favor of Plaintiffs over 402, assuming that the Easements were earlier extinguished by foreclosure. In their Motion, Defendants seek partial summary judgment, on Count I, because the 1990 foreclosure of the senior 1987 Mortgages extinguished both Easements and, on Count II, because Ms. Siniscalco, not being the sole owner of 402 at the time of the 2017 Deed, could not grant an easement over it. Each argument is addressed in turn. 





Extinguishment Of The Easements By Foreclosure 





 It is blackletter law that "[a] servitude is not extinguished by foreclosure of a lien against the estate burdened by the servitude unless the lien has priority over the servitude." Restatement (Third) of Property: Servitudes, § 7.9 (2000) (emphasis added). "A valid foreclosure of a mortgage terminates all interests in the foreclosed real estate that are junior to the mortgage being foreclosed and whose holders are properly joined or notified under applicable law." Restatement (Third) Of Property: Mortgages, § 7.1 (1997). 





 It is a fundamental principle of mortgage law that a valid judicial foreclosure of a senior mortgage terminates not only the owner's title and equitable redemption rights, but also all other junior interests whose holders were made parties defendant. A power of sale (nonjudicial) foreclosure that complies with applicable statutory notice and related requirements accomplishes the same result. 





Id. at comment a. [Note 6] That is so because "[t]o recognize the junior liens would deprive the mortgagee of property without due process of law." Milton Sav. Bank v. United States, 345 Mass. 302 , 305 (1963). 





 Here, the Easements are junior to the 1987 Mortgages and so were extinguished by U.S. Trust's 1990 foreclosure of its mortgages unless, as argued by Plaintiffs, a different result should prevail, with respect to 408, based on the language used by U.S. Trust in the 1990 notice of foreclosure sale and, with respect to 402, based on some overlap of individuals involved with the Trust, MRS and the 1987 Mortgages and the expressed intent of some of them in 2005 and later. This court does not find either argument persuasive. 





 The 1990 notices of foreclosure state, with respect to both 408 and 402, that the foreclosure sales are "subject to ... all ... easements ... and existing encumbrances of record, if there be any, and all encumbrances of record which are prior to said mortgage." According to Plaintiffs, in using this language, "U.S. Trust acknowledged the distinction between encumbrances that were both senior and junior to its mortgage and sold 408 ... subject to all of those encumbrances, regardless of priority." Plaintiffs' Opposition To Defendants' Motion For Summary Judgment On Counts I And II at 6. The Supreme Judicial Court's decision in Milton Savings Bank, cited above and relied upon by the court in denying Plaintiffs' earlier motion for a preliminary injunction, remains dispositive of this argument. 





 In Milton Savings Bank, Milton Savings Bank ("the Bank"), as the holder of two prior recorded mortgages, and the purchasers at foreclosure sales under those mortgages, requested that a judge of this court amend the two certificates of title to the registered parcels that were foreclosed upon by striking out tax liens for the United States of America and the Commonwealth of Massachusetts. The tax liens were filed with the Registry District in 1958, subsequent in time to the Bank's 1955 mortgages. The Bank foreclosed on the mortgages in 1959. The Land Court judge concluded that the foreclosure sales divested the junior tax liens, a decision that the Supreme Judicial Court upheld. 





 At the outset of its analysis, the court noted that the mortgaged property did not belong to the mortgagor, who had "merely an equity of redemption accompanied by a right to possession. The paramount title is in the mortgagee." Milton Sav. Bank, 345 Mass. at 305. In response to the United States' argument that its liens were expressly preserved by the terms of the notices of sale, which the court described as "very narrow and untenable," id. at 306, the court looked first to the language of the notice: "The United States seizes upon the phrase 'subject to any and all tax liens' as expressly including the junior Federal tax liens which are an occasion for this petition." Id. at 306. According to the court, "[i]t would have been unreasonable for anyone to construe the mortgagee's notices as intended to go beyond the requirements of [G. L. c. 244,] § 14, and gratuitously to reach out and protect junior encumbrances." Id. at 307. This was so because "[a] mortgagee in executing a power of sale contained in a mortgage is bound to exercise good faith and to use reasonable diligence to protect the rights and interests of the mortgagor under the contract." Id. "'It is his duty, for the benefit of the mortgagor whom he represents, so to act in the execution of the power as to obtain for the property as large a price as possible.'" Id., quoting Clark v. Simmons, 150 Mass. 357 , 359 (1890). Concluding, the court stated that, "[i]n the case at bar, the bank would not have been acting reasonably if it had made the sales subject to junior liens." Id. at 308. 





 The same result obtains here. U.S. Trust had a duty to the Trust to maximize the price received for 402 and 408 at the time of the 1990 foreclosure sales, a duty that would have been breached by making those sales subject to junior encumbrances. That, as argued by Plaintiffs, the language of the notice of sale in this case is different from that in Milton Savings Bank ("existing encumbrances of record, if there be any, and all encumbrances of record which are prior to said mortgage" here, and "subject to any and all tax liens, unpaid taxes, tax titles, and any or all municipal liens and assessments, if any there be" in Milton Savings Bank) does not lead to a different result: both notices can be read (although not reasonably, in view of the mortgagee's obligations) as subjecting the sale to junior encumbrances, yet that fact was insufficient for the Milton Savings Bank court to overcome an interpretation based on the obligation of the mortgagee to protect the interests of the mortgagor. In addition, Plaintiffs cite no authority for the proposition that the rules of construction related to instruments of conveyance (to give effect to the intent of the parties as manifested by the words used interpreted in the light of then existing circumstance, Patterson v. Paul, 448 Mass. 658 ,665 (2007); all parts to be read consistently to ascertain the intent of the draftsman, Brooks v. Capital Truck Leasing, Inc., 13 Mass. App. Ct. 471 , 476 (1982)) can or should be applied to a notice of sale published in advance of a foreclosure sale in order to determine the intent of the mortgagee. Finally, it bears noting that Plaintiffs' argument, if adopted by the court, would result in the 1990 foreclosure sales being subject not only to the Easements but also to other junior encumbrances, if any, of record. Plaintiffs' interpretation of U.S. Trust's 1990 notices of sale is, as was the case in Milton Savings Bank, "untenable." 





 In view of the fact that the Easements were extinguished by U.S. Trust's 1990 foreclosure sales, Plaintiffs' arguments regarding why the easement over 402 survived the Siniscalcos' and Mr. Rybeck's 2001 foreclosure sale is irrelevant. Even were that not the case, those arguments are unavailing. Having chosen to operate through the Trust and a corporation, MRS, for whatever advantages that might bring them, there is no basis for disregarding those forms in assessing the "intent" of individuals affiliated with one or both of them. [Note 7] Plaintiffs have not pointed to any exception to the hearsay rule that would allow the court to consider statements (1) purportedly made to plaintiff Julie Murtagh by Mr. Siniscalco, Ms. Siniscalco or their daughter as to the continued existence of an easement over 402 for the benefit of 395 or (2) contained in the listing sheet for 395 prepared by a real estate broker in 2014. And, as Defendants observe, consideration of such off-record evidence would undermine a principal purpose of the Recording Act. See Board of Selectmen v. Lindsey, 444 Mass. 502 , 508 (2005) ("In this Commonwealth, 'because of the long-recognized inevitability and ubiquity of controversies over land, the Massachusetts Bay Colony enacted a recording act as early as 1640 for the declared purpose that "every man may know what estate or interest other men may have in houses, lands or other hereditaments they are to deal."' Long v. Wickett, 50 Mass. App. Ct. 380 , 397 n.13, 737 N.E.2d 885 (2000), citing A.L. Eno & W.V. Hovey, Real Estate Law § 2.1, at 13 n.1 (3d ed. 1995)." 





The Effect Of The Inclusion Of A Reference To The Easements In The 2017 Deed 





 With respect to Plaintiffs' Count II, Defendants argue that, because Ms. Siniscalco was not the sole owner of 402 at the time of the 2017 Deed conveying 395, she could not grant an easement over 402 for the benefit of 395 in that deed unless joined by her co-tenant, Ms. Rybeck, This is in accord with long-established law, see Benjamin v. American Tel. & Tel. Co., 196 Mass. 454 , 456-457 (1907) (citations omitted) ("It is well settled that a conveyance by metes and bounds by a tenant in common of a portion of the estate, if not void, is at least voidable as against his co-tenant. The defendant concedes, and rightly, that no distinction can be made between such a conveyance and the conveyance of an easement, for the reason that the latter would or might operate equally to the prejudice of a co-tenant."). Plaintiffs do not contest Defendants' argument in their opposition to the Motion. The court treats the claim as waived. 





CONCLUSION 





 Based on the undisputed facts and for the foregoing reasons, the Motion is ALLOWED. At the conclusion of this matter, judgment shall enter on Count I declaring that the Easements were extinguished by the 1990 foreclosure sales of 402 and 408, and on Count II declaring that the 2017 Deed did not create any easement rights over 402. The issue of Plaintiffs prescriptive rights over 402, Count III, remains open. 





 SO ORDERED 





FOOTNOTES
[Note 1] In Plaintiffs' Response To Statement of Material Facts Not In Dispute, dated March 4, 2021, Plaintiffs admitted all of the statements of material fact set forth by Defendants. 

[Note 2] The court takes judicial notice of the records in the Registry. See Mass. G. Evid. § 201. 

[Note 3] This mortgage also encumbered 395, but that fact is not relevant to the issues raised here. 

[Note 4] While not contained in the statement of agreed facts filed by the parties with the court, counsel agreed at the hearing on the Motion that this fact is undisputed. 

[Note 5] Plaintiffs have provided MRS' annual report dated March 15, 2001 and filed with the Secretary of State on June 30, 2001, as evidence of the officers of MRS on January 2, 2001, P. App. Ex. 11. Leaving aside issues of authentication, the annual report appears to be for the period of March 15, 2001 to March 15, 2002, when the listed officers' terms expire, and so does not serve the purpose for which it was offered. 

[Note 6] "Massachusetts is a nonjudicial foreclosure State." Pinti v. Emigrant Mortgage Company, Inc., 472 Mass. 226 , 236 n.16 (2015). 

[Note 7] Plaintiffs point to the fact that, when the Trust granted the Easement over 402 for the benefit of 395, Mr. Miller was the Trustee of the Trust; Mr. Siniscalco and Mr. Rybeck were officers of MRS, the owner of 395; and Mr. Siniscalco and Mr. Rybeck, individually, were mortgagees with a prior security interest in 402. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.